**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GARY GILL MARTIN,<br><br>                    Plaintiffs,<br><br>v.<br><br>QBE INSURANCE CORPORATION,<br><br>                    Defendant. | Case No.: 18-CV-2439 W (BLM)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [DOC. 4]** |

     Defendant QBE Insurance Corporation moves to dismiss Plaintiff Gary Gill Martin's Complaint under Federal Rule of Civil Procedure 12(b)(6). Along with the motion, Defendant also requests judicial notice of certain state-court documents. Plaintiff opposes the motion and objects to the request for judicial notice.

     The Court decides the matter on the papers submitted and without oral argument. Civ. L.R. 7.1(d.1). For the following reasons, the Court **GRANTS** Defendant's request for judicial notice and **GRANTS** the motion to dismiss [Doc. 4].

## I. BACKGROUND

In this insurance-coverage dispute, Plaintiff Gary Gill Martin is suing his insurer, QBE Insurance Corporation, for refusing to defend him in a lawsuit filed by Brooks and Darlene Gifford in the San Diego Superior Court (the "*Gifford* litigation" or "*Gifford*"). *Gifford* was the second state-court lawsuit filed against Martin arising from his dual representation of the Giffords, as sellers, and Eric and Lauren Schiermeyer, as buyers, in the sale of a multi-million-dollar ocean-front home in Solana Beach, California (the "Property").

According to Martin's Complaint, he is a self-employed broker in the residential real-estate market in North San Diego County. (*Compl.* ¶ 1.[1]) Martin purchased a Real Estate Services Errors and Omissions Liability Insurance Policy (the "Policy") from QBE. (*Id.* ¶ 6.[2]) The Policy provided coverage for claims made against Martin and reported during the policy period, March 23, 2016 through March 2l, 2017. (*Id.*) "The Policy cover[ed], among other things, real estate errors and omissions committed by [Martin], for which [he] becomes legally obligated to pay damages to third parties." (*Id.*) The Policy also provided coverage for "Wrongful Acts" that occurred before March 23, 2010 (the "Retroactive Date") but were "first made against" Martin during the Policy Period. (*Policy* p. 18 ¶ C.2.b.)

On August 4, 2016, the Giffords sued Martin for alleged misrepresentations made in connection with the sale of the Property. (*Compl.* ¶ 8.) Martin tendered the *Gifford* claim to QBE, who denied coverage on August 31, 2016 based on its finding that the *Gifford* litigation was related to the same real-estate transaction at issue in an earlier lawsuit filed by the Schiermeyers (the "*Schiermeyer* litigation" or "*Schiermeyer*"). (*Id.* ¶

---

[1] A copy of the Complaint is attached to the Notice of Removal [Doc. 1] as Exhibit B [Doc. 1-3].

[2] The Policy is Exhibit 1 to the Complaint (*Compl.* ¶ 6) and therefore part of Exhibit B (i.e., the Complaint) to the Notice of Removal. Page references to the Policy are to the page number listed under the "Exhibit B" stamp.

9, Ex. 2 (the "Denial Letter").[3]) Specifically, QBE's Denial Letter stated that the *Gifford* claim "was not first made during the QBE policy period" because "the claims and damages asserted in [the *Gifford* litigation] arise out of the same real estate transaction, the same alleged failure to disclose unpermitted structures on the property that was sold, and the same commission you received as a dual agent for the transaction" that were at issue in the 2014 *Schiermeyer* litigation. (*Denial Letter* p. 29.)

On August 24, 2018, Martin filed this lawsuit against QBE in the San Diego Superior Court for refusing to defend him the *Gifford* litigation. (*See Compl.*) The Complaint asserts causes of action for breach of contract and tortious breach of the covenant of good faith and fair dealing ("bad faith"). Martin contends that QBE's wrongful refusal to defend him forced Martin to settle *Gifford* for more than $500,000 of his own funds to avoid the risk of further litigation and trial. (*Id.* ¶ 10.)

On October 24, 2018, QBE removed the lawsuit to this Court. (*See Notice of Removal.*) QBE now moves to dismiss, arguing there is no coverage under the Policy.

## II. LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See N. Star Int'l v. Ariz. Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true. Id. The court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party." Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002); see also Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).

---

[3] Page references to QBE's Denial Letter are to the page number listed under the "Exhibit B" stamp.

As the Supreme Court has explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 1964-65. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, courts may consider documents specifically identified in the complaint whose authenticity is not questioned by parties. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statutes on other grounds). Moreover, courts may consider the full text of those documents, even when the complaint quotes only selected portions. Id. The court may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

## III. DISCUSSION

QBE argues it does not have a duty to defend Martin because under the Policy's terms, the *Gifford* lawsuit and *Schiermeyer* lawsuit constitute the same "Claim" that was deemed made before the start of Martin's QBE Policy. In support of its argument, QBE requests judicial notice of the complaints filed in *Gifford* and *Schiermeyer*. (*See RJN* [Doc. 4-2].) Martin objects to QBE's request for judicial notice and disputes QBE's interpretation of the Policy.

4

### A. QBE's Request for Judicial Notice.

Federal Rule of Civil Procedure 201 permits a court to take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Under this rule, a court may "take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," but it "cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

Under Rule 201, judicial notice of the complaints in *Gifford* and *Schiermeyer* is appropriate. See NuCal Food, Inc. v. Quality Egg LLC, 887 F.Supp.2d 977, 984 (E.D. Cal. 2012) ("Courts have consistently held that courts may take judicial notice of documents filed in other court proceedings."). Martin argues, however, that although the complaints may be judicially noticed, QBE improperly "seeks to have this Court accept as true all the allegations … made in each of the documents…." (*Pl's Obj.* [Doc. 8-1] 3:14–15.) QBE responds that it is not seeking to have the allegations accepted as true, only that the complaints "were filed on certain dates, [and] that the pleadings contained certain allegations (without claiming that the allegations were or are true) …." (*QBE Response to Obj.* [Doc. 9-1] 3:5–8.) The Court agrees with QBE.

QBE's motion is based on the contention that *Gifford* arises from the same "Wrongful Act" as *Schiermeyer* and thus the two "Claims" constitute the same "Claim" under the Policy. As discussed below, resolution of this issue turns on whether the two lawsuits are based on "common facts, circumstances, situations, transactions, events and/or decision…." (*Policy* p. 23 ¶ K.2.) In evaluating this issue, it is immaterial whether the allegations in the complaints are true. Instead, what is relevant are the allegations made in each complaint. Because the allegations can be readily determined by reviewing the complaints, the basis for the complaints is beyond reasonable dispute.

5

Accordingly, the Court overrules Martin's objections and will grant QBE's request for judicial notice of the complaints in *Gifford* and *Schiermeyer*.[4]

**B.    Does the Policy Cover the *Gifford* Claim?**

   **1.    California Insurance Law**

California law obligates an insurer to defend the insured when the facts alleged in the complaint create a potential for coverage. Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 654 (2005). In evaluating the duty to defend, the insurer may also consider facts outside those alleged in the complaint. Id. "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993).

The interpretation of the insurance policy is governed by the ordinary rules of contract interpretation. Palmer v. Truck Ins. Exchange, 21 Cal. 4th 1109, 1115 (1999). The fundamental goal in interpreting an insurance policy is to ascertain the parties' mutual intentions. Vons Cos., Inc. v. United States Fire Ins. Co., 78 Cal. App. 4th 52, 58 (2000). Where possible, those intentions should be inferred solely from the policy's written terms. AIU Ins. Co. v. FMC Corp., 51Cal. 3d 807, 822 (1990). Thus, policy language that is clear and explicit governs. Id.

A policy term is ambiguous when it is susceptible to two or more reasonable constructions. EMMI Inc. v. Zurich American Ins. Co., 32 Cal. 4th 465, 470 (2004). Courts, therefore, will not adopt "a strained or absurd interpretation in order to create an ambiguity where none exists." Bay Cities Paving & Grading, Inc., v. Lawyers' Mutual

---

[4] The *Gifford* Complaint is attached to the Request for Judicial Notice as Exhibit A [Doc. 4-3]. The *Schiermeyer* Complaint is attached as Exhibit B [Doc. 4-4], and the *Schiermeyer* Second Amended Complaint is attached as Exhibit C [Doc. 4-5].

Ins. Co., 5 Cal. 4th 854, 867 (1993). Additionally, ambiguity cannot be found in the abstract. Id. Rather, the "proper question is whether the word is ambiguous in the context of this policy and the circumstances of this case." Id. at 868 (emphasis in original). The "policy 'must be construed as an entirety, with each clause lending meaning to the other.'" Carmel Development Co. v. RLI Ins. Co., 126 Cal.App.4th 502, 507 (2005). "Further, 'where the insuring clause of a policy clearly covers a risk, and a subsequent limiting clause does not clearly exclude it, the risk will be deemed to be covered by the policy.'" Kilroy Industries v. United Pacific Ins. Co., 608 F.Supp. 847, 855 (C.D. Cal. 1985) (citations omitted). Where an ambiguity exists, however, it should be resolved against the insurer. EMMI, Inc., 32 Cal. 4th at 470–471 (citing Safeco Ins. Co. of America v. Robert S., 26 Cal. 4th 758, 763 (2001)).

### 2. QBE's Policy

The Policy defines a "Claim" as "a demand for money or for services that alleges a negligent act, error, or omission in the rendering of or failure to render **Insured Services**." (*Policy* p. 22 ¶ C, emphasis in original.) Thus, the *Gifford* litigation and *Schiermeyer* litigation each constitute a "Claim" under the Policy.

The Policy's Insuring Agreements and Exclusions section contains a provision for Multiple Claims. It provides:

> **e. Multiple Claims:**
> All **Claims** arising from the same **Wrongful Act** will be deemed to have been made at the earlier of the following times:
> (1)  The date the first of those **Claims** is made against any of **You**; or
> (2)  The first date **We** receive **Your** written notice of the **Wrongful Act**.
> The provisions of the Policy in effect on that date will apply.

(*Policy* p. 20 ¶ C.2.e.) Under this provision, if *Gifford* and *Schiermeyer* arise from the same Wrongful Act, the Gifford Claim is deemed to have been made in March 2014 when the *Schiermeyer* Claim was made since it was the first Claim made against Martin. (*See Schiermeyer Compl.*)

7

18-CV-2439 W (BLM)

In evaluating whether multiple Claims arise from the same Wrongful Act, the following language from the Policy's definition of a Wrongful Act is relevant:

> All **Wrongful Acts** that:
> 1. Take place between the **Retroactive Date** and the end of the **Policy Period** of the last policy **We** issue to **You**, and
> 2. Are logically or causally connected by common facts. circumstances, situations, transactions, events and/or decisions will be treated under this Policy as one **Wrongful Act**.

(*Policy* p. 23 ¶ K.)

There is no dispute between the parties that the alleged Wrongful Acts in *Gifford* and *Schiermeyer* took place between the Retroactive Date and the end of the Policy Period. (*Opp'n* 5:14–18; *Gifford Compl.* ¶¶ 1, 2, 13; *Schiermeyer Compl.* ¶¶ 1, 2, 12.) Additionally, the complaints in *Gifford* and *Schiermeyer* demonstrate the alleged Wrongful Act in both cases are connected by common facts, circumstances and decisions. Both Claims involve the same alleged real-estate transaction—the March 2012 sale of the Property to the Schiermeyers for $5,100,000. (*Gifford Compl.* ¶¶ 1, 2, 13; *Schiermeyer Compl* ¶¶ 1–3, 10, 12.) Both Claims are based on allegations regarding Martin's role as the dual agent of the Giffords and Schiermeyer. (*Id.*) And both Claims asserted Martin was liable for negligent misrepresentations based on his alleged failure to make certain disclosures regarding the condition of the Property, such as the condition of beach staircase attached to a seawall. (*Gifford Compl.* ¶¶ 11, 16, 17, 37–40; *Schiermeyer Compl.* ¶¶ 14, 16, 24, 26, 28–30.) Because *Gifford* and *Schiermeyer* arise from the same alleged Wrongful Acts, the *Gifford* Claim is deemed to have been made in March 2014—before the inception of the Policy. Additionally, because coverage is only available for Claims made during the Policy Period, coverage is not afforded for the *Gifford* Claim.

Martin nevertheless raises several arguments in opposition to QBE's motion. First, he argues that QBE should not be allowed to rely on the "Known Circumstances Exclusion" to deny coverage because the provision is both ambiguous and was never provided to him. (*Opp'n* 9:4–10:4.) Variations of this argument appear to be repeated at

8

other points in the opposition. (*Id.* 13:12–2214:6–13, 13: All of these arguments are unavailing because regardless of the applicability of the Known Circumstances Exclusion, coverage does not exist under the Multiple Claims provision.

Martin also appears to argue that the Multiple Claims provision improperly displaces or is inconsistent with the Prior Wrongful Acts provision, which provides coverage for the *Gifford* Claim. (*Opp'n* 14:21–26.) Because the two provisions are inconsistent, Martin argues "they create an ambiguity that must be held against QBE as a matter of law." (*Id.*) The Court disagrees the two provisions are inconsistent.

Under the Policy, coverage is afforded for "Prior Wrongful Acts" that are "committed between the **Retroactive Date** and the Effective Date of this Policy, but only if all of the following conditions are met[:]"

(1) The written **Claim** is first made against any of **You** during the Policy Period. **We** will consider a **Claim** to be first made against **You** when a written **Claim** is received by any of **You**;

(2) None of **You** knew, after inquiry of **Your** employers, agents, and clients of **Your** agents and employees, prior to the Effective Date of the first of one or more errors and omissions policies issued to **You** by **Us** or **Our** affiliates, which together provided continuous coverage until the Effective Date of this Policy, of a circumstance that could reasonably be expected to lead to the **Claim**; and

(3) There is no other valid and collectible insurance for the **Claim**.

(*Policy* p. 18 ¶ C.2.b.) Coverage is not available under this provision because the *Gifford* Claim does not satisfy the first condition—that the "written **Claim** is first made … during the Policy Period." As explained above, under the Multiple Claims provision, the *Gifford* Claim is deemed to have been made before the Policy Period, when the *Schiermeyer* Claim was made.

Moreover, contrary to Martin's argument, the Multiple Claims provision does not displace the Prior Wrongful Acts provision. In this case, for example, if the Schiermeyers had not sued Martin or filed suit during the Policy Period, Martin would

9

have been entitled to coverage for both Claims even though they are based on a Wrongful Act that occurred before the inception of the Policy.

Finally, Martin also repeatedly suggests QBE's motion inappropriately requires the Court to make numerous factual determinations. But the only factual determination required is whether the *Gifford* Complaint and *Schiermeyer* Complaint involve the same or similar factual allegations, which can be accomplished by simply reviewing the contents of the two documents.[5]

For these reasons, the Court finds Martin has failed to state a claim for breach of the Policy and bad faith.

### IV. CONCLUSION & ORDER

For the reasons set forth above, the Court **GRANTS** Defendant's request for judicial notice and motion to dismiss [Doc. 4] **WITHOUT LEAVE TO AMEND** and **ORDERS** this case **DISMISSED**.

**IT IS SO ORDERED.**

Dated: May 7, 2019

Hon. Thomas J. Whelan
United States District Judge

---

[5] Martin's argument seems to suggest there may be a dispute regarding whether *Gifford* and *Schiermeyer* involve the same Wrongful Act. So too does his argument that QBE engaged in bad faith because it denied the claim without investigating the facts. (*See e.g. Opp'n* 11:17–24.) Yet, nowhere in his opposition does Martin ever indicate how the Wrongful Act in *Gifford* may have differed from the Wrongful Act in *Schiermeyer*, nor does he identify what facts QBE failed to discover that would have changed the analysis under the Multiple Claims provision.